Utilities Comm. v. Telephone Co.

STATE OF NORTH CAROLINA, EX REL, UTILITIES COMMISSION, AND TOWN OF BATTLEBORO, NORTH CAROLINA v. CAROLINA TELEPHONE AND TELEGRAPH COMPANY

No. 7410UC109

(Filed 17 April 1974)

1. Utilities Commission § 6— necessity for majority order — evidence heard by persons no longer on Commission

Purported final order of the Utilities Commission is invalid for the reason that it is not a majority order as required by G.S. 62-60 where only one of the three commissioners who heard the evidence at the public hearing was still a member of the Commission and participated in the final order and the case was not heard before a hearing division but was heard before the Commission.

2. Utilities Commission § 6— consolidation of docketed cases — absence of notice

The Utilities Commission erred in consolidating two docketed cases without notice to respondent telephone and telegraph company and in basing its purported order in one of the cases on the record in both dockets.

APPEAL by respondent, Carolina Telephone and Telegraph Company, from Order of North Carolina Utilities Commission in Docket No. P-7, Sub 481, filed 20 June 1973. Argued in the Court of Appeals 19 February 1974.

This proceeding was initiated on 2 December 1969, and 12 February 1970, by the Town of Battleboro, hereinafter referred to as Battleboro. The complaint, filed by way of two letters to the North Carolina Utilities Commission, hereinafter called Commission, averred that the telephone service furnished by Carolina Telephone and Telegraph Company, hereinafter referred to as Carolina, was inadequate and the rates charged excessive.

On 25 March 1970, Carolina filed a motion asking for a bill of particulars. This motion was denied. Carolina was granted extension of time within which to answer and filed its answer on 10 April 1970. Battleboro found the answer unsatisfactory and asked for a public hearing. By order dated 6 May 1970, a public hearing was set for 28 July 1970 in Battleboro. At that time, the case was heard before Commissioners Harry T. Westcott, Chairman; Marvin R. Wooten and Miles H. Rhyne.

On 24 June 1971, while all three commissioners who had heard the matter were still members of the Utilities Commission,

an interim order was entered making certain reductions in the applicable rates. That order contained the following language: "That this docket be continued and remain open and active for such further action by the Commission from time to time as may be appropriate, pending action by the Commission in Docket No. P-7, Sub 529 and otherwise with reference to Carolina's rates, charges, and the quality of service which it renders." Carolina did not except to nor appeal from this order.

On 16 November 1971, and on 25 and 26 October 1972, the Commission conducted a hearing in Docket P-7, Sub 529. Commissioners Harry T. Westcott, Chairman; John W. McDevitt, Marvin R. Wooten, Miles H. Rhyne, and Hugh A. Wells participated in the November 1971 hearing. With the exception of Harry T. Westcott, the same commissioners participated in the hearings of October 1972. Docket P-7, Sub 529, is captioned: "In the Matter of Order to Show Cause Why Carolina Telephone and Telegraph Company should not flow through to its Rate Payers the Additional Monies That Will Accrue after January 1, 1971, on the Account of and Resulting from the Memorandum of Agreement between American Telephone and Telegraph Company and the United States Independent Telephone Association dated July 15, 1970."

From 1 January 1973 to and including 20 June 1973, the members of the Commission were Marvin R. Wooten, Chairman; John W. McDevitt; Ben E. Roney; and Hugh A. Wells. It is stipulated that no final order has been entered by the Commission in Docket P-7, Sub 529, and that Docket remains open. It is further stipulated that there was no order entered or action taken by the Commission prior to its final order in this cause on 20 June 1973, purporting to consolidate Docket P-7, Sub 481, with Docket P-7, Sub 529, for hearing.

The final order entered on 20 June 1973, directed that Carolina still further reduce its rates in Battleboro and in a corridor running to Battleboro from the outer limits of the Rocky Mount base rate area to the same level as those charged in the Rocky Mount base rate area. Of the three commissioners who heard the evidence at Battleboro, only Commissioner Wooten participated in the final order.

The final order contains the following preliminary statements:

"HEARD IN: The Battleboro Community House, Main Street, Battleboro, North Carolina, on July 28, 1970, at 10:00 a.m.

The Commission Hearing Room, Ruffin Building, Raleigh, North Carolina, on November 16, 1971, and October 25-26, 1972 *(Docket No. P-7, Sub 529)* (Emphasis supplied.)

BEFORE: Chairman Harry T. Westcott (Presiding), and Commissioners Marvin R. Wooten and Miles H. Rhyne.

Chairman Harry T. Westcott (Presiding), Commissioners John W. McDevitt, Marvin R. Wooten, Miles Rhyne and Hugh A. Wells on November 16, 1971 *(Docket No. P-7, Sub 529)* (Emphasis supplied.)

Chairman Marvin R. Wooten (Presiding), Commissioners John W. McDevitt, Miles H. Rhyne, and Hugh A. Wells on October 25-26, 1972 *(Docket No. P-7, Sub 529)* (Emphasis supplied.)"

The Commission order further states:

"BY THE COMMISSION: This proceedings was the subject of an Interim Order dated June 24, 1971. That Order effectively and appropriately reviews the background of the case and the events leading up to the Interim Order, and it is therefore unnecessary to repeat that information here.

As indicated in said Interim Order, this Docket was left open for further Order preceding the outcome of the proceedings in Docket No. P-7, Sub 529. Hearings in that docket have now been concluded, briefs filed, and that matter is awaiting Commission decision.

The Town of Battleboro's complaint was further considered in and consolidated for hearing with Docket No. P-7, Sub 529. Further evidence was presented in that docket which bears upon Battleboro's complaint.

Based upon the entire record in this docket, and in Docket No. P-7, Sub 529, the Commission makes the following

FINDINGS OF FACT."

Findings of fact are not deemed necessary for determination of this appeal.

On 2 August 1973, Carolina moved to rescind, alter, or amend the order. This motion was denied, and Carolina filed its exceptions to the final order, its findings of fact and conclusions of law and appealed to this Court.

*Maurice W. Horne, Assistant Commission Attorney, for North Carolina Utilities Commission, appellee.*

*Joyner and Howison, by R. C. Howison, Jr., and Taylor, Brinson and Aycock, by William W. Aycock, for Carolina Telephone and Telegraph Company, appellant.*

*Fountain and Goodwyn, by George A. Goodwyn, for Town of Battleboro, appellee.*

MORRIS, Judge.

[1] In speaking to appellant's assignments of error, we will follow the sequence used by it in its brief. Since it first argues its assignment of error No. 4, we will first discuss the question raised by that assignment of error, to wit: Is the Commission's final order dated 20 June 1973, invalid for that it is not a majority order of the Commission as required by N. C. General Statutes § 62-60?

Unquestionably, the only commissioner who was a member of the Commission at the time of the entry of the final order who was present and heard the testimony at the public hearing in Battleboro was Commissioner Wooten. Neither is there any question but that "[t]he North Carolina Utilities Commission shall consist of five commissioners . . . " G.S. 62-10, nor but that "[a] majority of the commissioners shall constitute a quorum, and any order or decision of a majority of the commissioners shall constitute the order or decision of the Commission, except as otherwise provided in this chapter." G.S. 62-60.

G.S. 62-76 provides:

"(a) Except as otherwise provided in this chapter, any matter requiring a hearing shall be heard and decided by the Commission or shall be referred to a division of the Commission or one of the commissioners or a qualified member of the Commission staff as examiner for hearing, report and recommendation of an appropriate order or decision thereon. Subject to the limitations prescribed in this article, a hearing division, hearing commissioner or examiner to whom a hearing has been referred by order of the chairman shall have the rights, duties, powers and jurisdiction conferred by this chapter upon the Commission. . . .
(b) In all cases where a division of the Commission hears a proceeding and as many as three commissioners hearing

the case approved the recommended order, such order shall thereby become and shall be issued as a final order of the Commission. If less than three commissioners approve such order, it shall be a recommended order only, subject to review by the full Commission, with all commissioners eligible to participate in the final arguments and decision."

The record is devoid of any order of the chairman referring this matter to a hearing division. The order of 6 May 1970 simply directed that a public hearing be held in Battleboro on 28 July 1970 and that the Commission staff investigate the matter and present evidence at the hearing. The Interim Order for Relief was filed 24 June 1971, and contains the statement "Issued by Order of the Commission." By statutory definition (G.S. 62-3(5)), " 'Commission' means the North Carolina Utilities Commission." It appears, therefore, that it was not intended that the Battleboro hearing be before a hearing division, but that it was intended that the hearing be conducted before the Commission. G.S. 62-60 provides that:

"A majority of the commissioners shall constitute a quorum, and any order or decision of a majority of the commissioners shall constitute the order or decision of the Commission, except as otherwise provided in this chapter."

It is obvious that if three commissioners concur, the order entered by them constitutes the order of the Commission. The question before us is whether those three concurring in the order must have heard the evidence. Some help is gained from G.S. 62-76 which provides for hearing by divisions of the Commission. Section (b) of that statute is quoted above.

It seems inconceivable that the General Assembly intended that when a matter is heard by a hearing division, if "as many as three commissioners *hearing the case* approved the recommended order," the order shall become a final order, but that the Commission, when a matter is heard before it, can issue a final order when only *one* of the commissioners *who heard the case* approves the order.

If we take the position that, although no order was entered designating a "hearing division," the three commissioners who heard the evidence did constitute a division, there is no question but that G. S. 62-76(b) requires that the purported final order could be nothing more than a recommended order.

The purported final order can, therefore, be no more than a recommended order, and the matter must be remanded for a hearing before the Commission.

[2] This disposition of the case makes unnecessary any further discussion with respect to other assignments of error with one exception. Carolina assigns as error the action of the Commission in consolidating Dockets P-7, Sub 481 and P-7, Sub 529 without notice to it and in basing the purported final order on the record in both dockets. We agree that this was reversible error. We have before us only the record in Docket No. P-7, Sub 481. We have no way of knowing what other evidence the Commission considered. This assignment of error is sustained.

Remanded for hearing by the Commission.

Chief Judge BROCK and Judge CARSON concur.